## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

DAVID SCOTT,

Plaintiff,

v.

HILL-ROM COMPANY, INC.
and DEVIN ROSS PASCHAL,

Defendants.

CIVIL ACTION NO.

4:17-CV-00021-HLM

## ORDER

This case is before the Court on Defendant Hill-Rom

Company, Inc.'s ("Defendant Hill-Rom"), Motion for Summary

Judgment [81].

# I.   Background

## A.  Preliminary Statement

Keeping in mind that, when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts.  Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012).   This statement does not represent actual findings of fact.  Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 530 (11th Cir. 2013).  Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

As required by the Local Rules, Defendant Hill-Rom submitted a Statement of Material Facts ("DSMF").  (Docket Entry No. 81-2.)   As also required by the Local Rules, Plaintiff David Scott ("Plaintiff") filed a response to DSMF

("PRDSMF").   (Docket Entry No. 89-1.)   The Local Rules
require the respondent to file responses "corresponding to
each of the movant's numbered undisputed material facts."
N.D. Ga. R. 56.1(2)a.(1).   Plaintiff responded to some, but
not all, of Defendant Hill-Rom's facts.   Therefore, the Court
must deem each of Defendant Hill-Rom's facts admitted if
they are supported by the record citation provided.   See
Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008)
(explaining that, after deeming statement of undisputed facts
to be admitted, the court must review the citations to the
record to determine if there really is no genuine issue of
material fact); Lumbermen's Underwriting Alliance v. Blunt
Int'l, Inc., No. 3:05-cv-064-JTC, 2007 WL 7603709, at *1
(N.D. Ga. Feb. 5, 2007) ("Because Defendant did not
respond to Plaintiff's statement of additional facts, the Court
deems each of Plaintiff's statement of additional facts

3

admitted where the fact is supported by a citation to evidence proving such fact."). Defendant Devin Ross Paschal ("Defendant Paschal") also filed a response to DSMF ("Paschal RDSMF"). (Docket Entry No. 90.) Additionally, Plaintiff filed his own Statement of Material Facts ("PSMF") (Docket Entry No. 89-1),[1] to which Defendant Hill-Rom responded ("DRPSMF") (Docket Entry No. 98) and Defendant Paschal responded ("Paschal RPSMF") (Docket Entry No. 99). The Court evaluates DSMF, PRDSMF, Paschal RDSMF, PSMF, DRPSMF, and Paschal RPSMF infra. Where the Court cites to a proposed statement of fact, but not the response, the Parties can conclude that the Court deemed the fact supported and overruled any corresponding objections to it.

---

[1] Plaintiff filed an amended PSMF to correct one citation. (Amended PSMF (Docket Entry Nos. 100-01).) The Court has reviewed the citation.

4

As an initial matter, the Court excludes PSMF ¶ 4 because it offers a legal conclusion. <u>See</u> N.D. Ga. R. 56.1B(2)b (stating that a nonmovant's "statement of material facts must meet the requirements set out in LR 56.1B(1)"); N.D. Ga. R. 56.1B(1) ("The court will not consider any fact . . . stated as an issue or legal conclusion."). The Court excludes PSMF ¶ 6 because it is immaterial. <u>See</u> N.D. Ga. R. 56.1B(3) (stating that a valid objection to a statement of additional material facts is "an objection on the ground that the respondent's fact is not material. . . ."). Further, the Court excludes PSMF ¶¶ 22, 23, and 31 because those facts are not supported by the evidence cited. <u>See</u> N.D. Ga. R. 56.1B.(3) (stating that a valid objection to a statement of additional material facts is "an objection pointing out that the respondent's evidence does not support the respondent's fact"). Finally, Defendant Paschal objects to DSMF ¶ 4 as

5

not supported by competent evidence. (Paschal RDSMF ¶

4.)    The  Court  sustains  Defendant  Paschal's  objection

because Defendant Hill-Rom only cites to the Complaint in

support of DSMF ¶ 4. See N.D. Ga. R. 56.1B.(1) ("The court

will not consider any fact . . . supported by a citation to a

pleading rather than to evidence.").

## B.   Factual Background

### 1.   Events Leading to Collision

On July 1, 2016 at approximately 3:40 a.m. on Interstate

24, at or near the Interstate 59 South Split, in Dade County,

Georgia,  Plaintiff  was  driving  his  tractor-trailer  truck

westbound in the left lane and was traveling about 100 yards

behind a vehicle driven by Tiffany Devon Pierce. (DSMF ¶

1.)  Defendant Paschal was driving the wrong direction on

Interstate 24, causing him to side-swipe Ms. Pierce's vehicle

and then crash head-on into Plaintiff's tractor-trailer truck.

(<u>Id.</u> ¶ 2.) Plaintiff sustained non-life threatening physical injuries. (<u>Id.</u> ¶ 3.)

At the time of the accident, Defendant Paschal's driver's license was suspended and revoked indefinitely by the State of Tennessee. (PSMF ¶ 1; DRPSMF ¶ 1.) It had been suspended for nearly seven months. (PSMF ¶ 1; DRPSMF ¶ 1.)

At the time of the subject accident, Defendant Paschal was driving a 2015 Dodge Ram van owned by Defendant Hill-Rom. (DSMF ¶ 5.) The vehicle was assigned to Defendant Paschal by Defendant Hill-Rom as part of his position as a Field Service Technician II. (<u>Id.</u> ¶ 6; PSMF ¶ 16; DRPSMF ¶ 16 (admitting Defendant Paschal was given access to a company vehicle).) When Defendant Paschal was given access to the van, he understood the vehicle was to be used for the sole purpose of performing employment

7

duties for Defendant Hill-Rom and for traveling to and from work.   (DSMF ¶ 7.)   Defendant Paschal understood that personal use of any Defendant Hill-Rom company vehicle, including the 2015 Dodge Ram van, was not authorized.  (Id. ¶ 8.)  Defendant Paschal also understood that he was not permitted to use any Defendant Hill-Rom company vehicle, including the 2015 Dodge Ram van, after consuming alcohol or illegal drugs.  (Id. ¶ 9.)

After completing all of his employment duties for Defendant Hill-Rom on June 30, 2016, Defendant Paschal left work and, as permitted, drove the 2015 Dodge Ram van owned by Defendant Hill-Rom home.  (DSMF ¶ 10.)[2]  After

---

[2] Defendant Paschal testified that he left work and went to softball practice on June 30, 2016.  (Dep. of Devin Ross Paschal (Docket Entry No. 85) at 84-86.)  However, Defendant Paschal admitted that GPS data taken from the van shows that he did not stop, before traveling from work to home, to play softball on June 30, 2016.  (Id. at 105-08.)  Defendant Paschal also admitted that

spending some time at home, Defendant Paschal drove the 2015 Dodge Ram van owned by Defendant Hill-Rom from his house to a restaurant to meet some friends for dinner. (Id. ¶ 11.)  According to Defendant Paschal, going to dinner with his friends was purely personal and had no connection to Defendant Hill-Rom business.   (Id. ¶ 12.)   Defendant Paschal understood that he was in violation of company policy when he drove to have dinner with his friends. (Paschal Dep. at 88, 120.)

Defendant Paschal does not remember anything that happened after dinner with his friends on June 30, 2016.

---

he could be mistaken about stopping to play softball before going home, and that he doesn't remember actually playing softball that day. (Id. at 108, 112.)  Further, Defendant Paschal agreed that he was "just assuming that [he] went to softball" because he later had dinner with certain people.  (Id. at 112.)   Finally, counsel asked Defendant Paschal, "[p]rior to this accident, you had completed all of your Hill-Rom employment duties and driven the van home from work, is that right[.]"   (Id. at 119.) Defendant Paschal responded, "[y]es, sir."  (Id.)

9

(DSMF ¶ 14.)   However, Defendant Paschal admits that whatever he was doing was purely personal and had no connection to Defendant Hill-Rom business.  (Paschal Dep. at 113, 119-21.)  According to GPS data for the 2015 Dodge Ram van, Defendant Paschal left dinner with his friends and drove the vehicle to downtown Chattanooga, near restaurants and bars.  (DSMF ¶ 15.)   Defendant Paschal admits that his trip downtown would have been for personal, not business reasons.  (Paschal Dep. at 113-14.)

According to GPS data for the 2015 Dodge Ram van, Defendant Paschal left downtown Chattanooga at approximately 2:40 a.m. on July 1, 2016.  (DSMF ¶ 17.) Defendant Paschal has no recollection of where he went, but acknowledged that any trip he made at this point was for purely personal purposes with no connection to his employment duties.   (Paschal Dep. at 119-121, 125.)

Several exchanges during Defendant Paschal's deposition illustrate this point:

> Q:  You understand at the time of the accident, you were operating the vehicle for a purpose that was prohibited, being a personal purpose, is that right?
>
> A:  Yes.
>
> . . .
>
> Q:  You agree you were in violation of Hill-Rom company policy with respect to personal use of the Hill-Rom van at the time of the accident?
>
> A:  Yes.
>
> . . .
>
> Q:  So I just want to be clear: But you would agree that Hill-Rom did not approve of the purpose for which you were using the vehicle at the time of the accident, correct?
>
> A:  Correct.

(Id. at 120-21, 125.)

11

## 2.  Being On-Call

Defendant Paschal testified that he was on-call the night of the accident.  (DSMF ¶ 19, as modified per Paschal Dep. at 41-44.)  Defendant Paschal testified that he remembers calling Defendant Hill-Rom's call center to place himself on-call for the night of the crash.  (Paschal Dep. at 69.)  However, Defendant Hill-Rom's corporate representative testified that Defendant Paschal was not on-call the night of the crash.  (Dep. of Robert Barber (Docket Entry No. 86) at 13.)  The time card in the computer—which indicates who received on-call pay at the time of the crash—shows that Michael Savor, rather than Defendant Paschal, was on call the night of the crash.  (Id. at 45-46.)  Defendant Paschal agreed that if the computer "showed somebody else, that other person would be on call."  (Paschal Dep. at 104.)  However, later in that same deposition, Defendant Paschal

12

asserted that nothing had caused him to change his testimony that he was on-call the night of the crash.  (Id. at 124.)

The job of a Defendant Hill-Rom employee on-call for any given night was to provide repairs or deliveries to the hospital when the hospital ordered it.   (PSMF ¶ 5, as modified per DRPSMF ¶ 5.)  While on-call, a Defendant Hill-Rom employee was paid for being available and responding if he received a call.  (Paschal Dep. at 43.)  When asked whether it was his "job that night to be driving a company vehicle," Defendant Paschal responded, "[y]es, sir."  (Id. at 60.)  Later, when asked whether he could stay at home while on-call, or whether he "ha[d] to be out driving around," Defendant Paschal clarified, "[n]o. No, sir.  You can do—it's personal time until you get that call."  (Id. at 125-26.)

13

Defendant Paschal was responsible for responding to calls within a 100-mile radius from Chattanooga, Tennessee within four hours of receiving the call. (PSMF ¶¶ 11-12; DRPSMF ¶¶ 11-12.) Defendant Paschal testified that he was within four hours of answering a call within a 100-mile radius of Chattanooga the night of the collision. (Paschal Dep. at 126.)

The Plaintiff Hill-Rom employee on-call for the night would receive a text message notifying them of a call. (PSMF ¶ 8, as modified per DRPSMF ¶ 8 and Paschal RPSMF ¶ 8.) Robert Frantzen testified that the call would come in from the Defendant Hill-Rom call center in the form of a scrambled number the employees could recognize. (Dep. of Robert Franzten (Docket Entry No. 87) at 19.) Defendant Hill-Rom obtained Defendant Paschal's phone records and determined that "[t]he text messages to and

from [Defendant] Paschal's cell phone on the night of the subject accident were not from a [Defendant] Hill-Rom call center." (Decl. of Robert Barber (Docket Entry No. 97-1) ¶ 9; Barber Dep. at 29; see also Phone Records, Ex. 7 (Docket Entry No. 89-1) at 000008-9; Phone Records, Ex. 4 (Docket Entry No. 98-1).)

The phone records show Defendant Paschal sent and received messages from four different numbers during the relevant time period. (Phone Records, Ex. 7 (Docket Entry No. 89-1) at 000008-9.) Defendant Hill-Rom's corporate representative testified that two of those numbers are not associated with Defendant Hill-Rom's call center, nor with a Defendant Hill-Rom Employee. (Barber Decl. ¶ 9.) However, his Declaration does not address the other two numbers, which Plaintiff identifies as "scrambled." (Id.; PSMF ¶ 10; see also Phone Records, Ex. 7 at 000008-9.)

15

Defendant Paschal stated that he did not receive or respond to any calls from Defendant Hill-Rom the night of the collision.  (Id. at 126-27.)[3]  Defendant Hill-Rom's dispatch records indicate that a call came in at 10:14 p.m. the night of the crash.  (Dispatch Record (Docket Entry No. 81-6).)  Due to the nature of the call—rental removals—it did not result in any on-call employee being dispatched to the hospital.  (Barber Decl. ¶ 7.)[4]  Instead, it resulted in two work-orders

---

[3] Defendant Paschal also testified, in the same deposition, that he does not recall if he got a call on the night of the collision. (Paschal Dep. at 43.)  However, "[t]estimony of a witness that he does not remember does not contradict positive testimony that such event took place." Gibbons v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 2:14-CV-586 JCM (VCF), 2015 WL 2345533, at *3 (D. Nev. May 15, 2015) (citation omitted).  The same rule should apply to positive testimony that an event did not take place.

[4] When testifying about what calls to which an employee must respond, Defendant Paschal stated, "[i]t usually was deliveries and repairs.  And any pick ups could wait 24 hours.  So we never worried about pick ups.  Just worried on our repairs and deliveries." (Paschal Dep. at 70.)

that were completed at 1:12 p.m., the following day, July 1, 2016. (Id.)

### 3.    Driver Disqualification Policy

Under Defendant Hill-Rom's Driver Disqualification Policy, a "Company documented occurrence and/or conviction" for driving fifteen miles an hour or more over the speed limit would qualify as a "serious traffic violation." (Driver Disqualification Policy (Docket Entry No. 81-14) at 3.) The penalty for such first occurrence would be "[v]erbal counseling and/or written notification of the infraction" on the "Employee's Personnel file." (Id. at 5.)   Under the Driver Disqualification Policy, a Defendant Hill-Rom employee would be permanently prohibited from driving a company vehicle with convictions for two serious traffic violations within any three year period. (Id. at 6; PSMF ¶ 27; DRPSMF ¶ 27.)

17

Defendant Hill-Rom's Driver Disqualification Policy defines what constitutes dangerous driving:

> Operating any motor vehicle in a manner that, in the Company's judgment, unreasonably endangers any person or property, regardless of whether such operation results in the issuance of citation by state, county or local police for misdemeanor reckless driving or any other moving violation.

> Dangerous driving may include, but is not limited to an[y] of the following (regardless of whether the operator receives a conviction of a Serious Traffic Violation): driving too fast, weaving in and out of traffic, failing to stop at posted intersections or properly yield to pedestrians or other vehicles, or otherwise demonstrating disregard for the safety of the operator, vehicle and/or general public.

(Driver Disqualification Policy at 2-3.)

Defendant Hill-Rom's Driver Disqualification Policy also had guidelines for employees who have had their license suspended:

> A Field Service Employee who cannot perform essential job functions involving the operation of a motor vehicle as a result of the temporary

18

revocation (i.e. ninety (90) days or less), suspension, withdrawal, or denial of an operator's license, permit or privilege (for reasons other than conduct prohibited by this SOP) shall be temporarily prohibited from performing such driving-related job functions until the Employee's license permit or privilege is restored.  In such event, the Employee shall be assigned temporarily to tasks that do not require the operation of any motor vehicle and/or (if non-driving work is unavailable) may be temporarily relieved from work without pay.  If an Employee's operator's license, permit or privilege is expected to remain revoked for more than ninety (90) days, the Employee shall be removed from his or her job and granted a thirty (30) day unpaid leave of absence during which time he or she may apply for other open positions in the Company that do not require operating a motor vehicle.   If the Employee is unsuccessful in securing such a position by the end of this thirty (30) day period, the Employee shall be terminated.

(Id. at 6-7; see also PSMF ¶¶ 24-25; DRPSMF ¶¶ 24-25.)

Under Defendant Hill-Rom's driver disqualification policies, Defendant Paschal was required to report any cited driving violations to Robert Frantzen within ten days of

19

occurrence.  (DSMF ¶ 35; PSMF ¶ 26; DRPSMF ¶ 26; Driver Disqualification Policy at 3.)

### 4.    Defendant Paschal's Employment

Defendant Paschal was hired by Defendant Hill-Rom in 2013.  (DSMF ¶ 22.)  The job description for a field service representative requires that the person driving a Defendant Hill-Rom vehicle have a valid driver's license.  (Service Rep. Req. (Docket Entry No. 101-1) at 3.)  As part of its hiring process, Defendant Hill-Rom conducted a check on Defendant Paschal's driving history prior to allowing him to drive a company vehicle.  (DSMF ¶ 23.)  The Motor Vehicle Record obtained by Defendant Hill-Rom at the time of Paschal's hire confirmed he had a valid driver's license and received two prior driving related violations within the last three years.  (Id. ¶ 24.)  In 2011, Defendant Paschal received a citation for driving twenty miles over the speed limit, and, in

2012, he was involved in an accident that caused property damage.    (Id. ¶ 25.)    Defendant Hill-Rom's corporate representative testified that Company Policy 7.5.4 would not have prohibited Defendant Paschal from operating a company vehicle upon his hiring in 2013 because it required convictions for two serious traffic violations within a three year period for disqualification, which Defendant Paschal did not have.  (Barber Dep. at 47-48.)

Defendant Hill-Rom conducted a background check on Defendant Paschal, which included searching both federal and state criminal records, researching education and employment background, and contacting prior employers; the background check did not reveal any criminal convictions.    (DSMF ¶ 27.)    Defendant Paschal contradictorily contends both that he did *and* did not inform Defendant Hill-Rom that he was arrested in 2011 for DWI.

(Paschal Dep. at 13, 15, 17-20.)   Defendant Hill-Rom's corporate representative contends that it had no knowledge of any arrests upon hiring Defendant Paschal.  (Barber Dep. at 25, 35.)

Defendant Hill-Rom required Defendant Paschal to go through driver training prior to driving any of Defendant Hill-Rom's vehicles.  (DSMF ¶ 28.)  Defendant Paschal's training included computer software safety training and "ride alongs" with his immediate supervisor that were graded.  (Id. ¶ 29.) Defendant Paschal was required to regularly complete training throughout his employment with Defendant Hill-Rom as well.  (Id. ¶ 30.)  Based on Defendant Hill-Rom's training records, Defendant Paschal completed more than 600 training lessons throughout his employment with Defendant Hill-Rom.  (Id. ¶ 31.)

22

Defendant Hill-Rom conducted a yearly check of Defendant Paschal's driving history while he was employed with the company. (DSMF ¶ 32.) When Defendant Hill-Rom conducted Defendant Paschal's 2014 MVR review, he had a valid license and there were no new citations. (Id. ¶ 33.)

On June 2, 2015, while driving a Defendant Hill-Rom company vehicle, Defendant Paschal was arrested for a suspended or revoked license, and Defendant Hill-Rom had to retrieve its vehicle. (PSMF ¶ 20; DRPSMF ¶ 20 (admitting this statement); Daecher Dep. at 73; Barber Dep. at 37-39.)[5]

---

[5] Defendant Paschal testified that Defendant Hill-Rom never suspended nor curtailed his driving privileges, nor did it ever discipline, counsel, or write up Defendant Paschal during his employment. (Paschal Dep. at 28, 56.) However, Defendant Paschal's supervisor, Steve Bice, testified that Defendant Paschal was not allowed to drive the company vehicle until he got his license reinstated after the June 2, 2015, arrest. (Dep. of Steve Bice (Docket Entry No. 88) at 65.) Hill-Rom's corporate representative also testified that Defendant Paschal's driving

23

Defendant Paschal's 2015 MVR was requested on August 6, 2015.  (2015 MVR (Docket Entry No. 81-13) at 2; Frantzen Dep. at 35.)    Defendant Paschal's 2015 MVR review revealed that he was cited for driving fifteen miles over the speed limit, and for improper backing into a vehicle, and additionally that he had his license suspended twice— once from December 8, 2014, to January 2, 2015, and another time from January 9, 2015, to July 22, 2015.  (2015 MVR (Docket Entry No. 81-13) at 3; PSMF ¶ 19; DRPSMF ¶ 19.)[6]   Mr Frantzen testified that, in his review of Paschal's 2015 driving record, he overlooked the new citations and did

---

privileges were temporarily suspended after the June 2, 2015 arrest.  (Barber Dep. at 51.)

[6] The 2015 MVR also shows failure to show proof of insurance on August 24, 2014, expired/no license on August 24, 2014, failure to answer/pay original violation on August 24, 2014, failure to answer/pay original violation case number: D376633 on August 24, 2014, and failure to appear trial/court case number D376633 on August 24, 2014.  (2015 MVR at 3.)

24

not note them on Defendant Paschal's violation and review record.  (DSMF ¶ 37; Frantzen Dep. at 30-31.)

Defendant Paschal failed to report each driving violation he was cited with during his employment.  (Frantzen Dep. at 30; DSMF ¶ 36; PSMF ¶ 29; DRPSMF ¶ 29.) Defendant Paschal was never disciplined for his failure to report driving violations to Defendant Hill-Rom.  (Bice Dep. at 56-57; Frantzen Dep. at 31; Barber Dep. at 41.)

Defendant Paschal's license was suspended on October 8, 2015 for failing to file an owner/operator report, which he was required to do as a result of an improper backing charge.  (DSMF ¶ 41.)

Defendant Paschal testified that he was promoted to Field Services Tech II in October 2015.  (Paschal Dep. at 28-30.)   Defendant Hill-Rom's corporate representative contends that the decision to promote Defendant Paschal

was made on May 25, 2016, while the effective date of promotion was June 14, 2016. (Barber Dep. at 42-43; Executed Errata Sheet (Docket Entry No. 98-2) at lines 21-22.) In addition to promoting Defendant Paschal, Defendant Hill-Rom decided to give him a company vehicle to take back and forth from home to work, whereas originally, Defendant Paschal had to drive his personal car to work and then pick up his company vehicle for the job. (Frantzen Dep. 11-12.)

Defendant Hill-Rom was scheduled to conduct Defendant Paschal's 2016 MVR review in August 2016. (DSMF ¶ 39.) When Mr. Frantzen reviewed Defendant Paschal's 2016 MVR a few days after the subject accident, it revealed that Defendant Paschal did not have a valid license. (See 2016 MVR (Docket Entry No. 89-1 at 97); Frantzen Dep. at 30-31.) Thus, Defendant Paschal drove the

26

company vehicle while his license was suspended. (Barber Dep. at 51.)

Defendant Hill-Rom did not have knowledge of the October 8, 2015 suspension until after the subject accident. (DSMF ¶ 42.) Defendant Paschal was required to report his suspended license to Mr. Frantzen, but never did so. (Id. ¶ 43.)

### 5.   Arrests

In August of 2014, Defendant Paschal was arrested for the improper backing charge. (Paschal Dep. at 24-25.) Defendant Paschal was arrested twice for public intoxication while employed by Defendant Hill-Rom. (PSMF ¶ 17.)

### C.   Procedural Background

Plaintiff filed this lawsuit on February 3, 2017. (Compl. (Docket Entry No. 1).) Defendant Hill-Rom filed its Motion for Summary Judgment on November 29, 2017. (Mot. Summ. J.

(Docket Entry No. 81).)  Defendant Hill-Rom seeks an entry of summary judgment concerning Plaintiff's claims of (1) respondeat superior, (2) negligent hiring, training, supervision, and retention, (3) negligent entrustment, (4) negligent driving qualifications, contracting, and maintenance, (5) gross negligence, (6) negligence per se, and (7) punitive damages.  (Def.'s Br. Supp. Mot. (Docket Entry No. 81-1) at 1-2.)

The briefing process for the Motion is complete, and the Court finds that the matter is ripe for resolution.

## II.   Standard

Federal Rule of Civil Procedure 56(a) allows a court to grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of

28

showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012). Once the moving party has supported its motion adequately, the burden shifts to the non-movant to rebut that showing by coming forward with specific evidence that demonstrates the existence of a genuine issue for trial. Id. When evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable factual inferences in the light most favorable to the party opposing the motion. Morton v. Kirkwood, 707 F.3d 1276, 1280 (11th Cir. 2013); Strickland, 692 F.3d at 1154. The Court also must "resolve all reasonable doubts about the facts in favor of the non-movant." Morton, 707 F.3d at 1280 (internal quotation marks and citations omitted). Further, the Court may not make credibility determinations, weigh conflicting

evidence to resolve disputed factual issues, or assess the quality of the evidence presented.   <u>Strickland</u>, 692 F.3d at 1154.   Finally, the Court does not make factual determinations. <u>Rich</u>, 716 F.3d at 530.

## III.   Discussion

### A.   Respondeat Superior

Defendant Hill-Rom argues that it cannot be held liable under the doctrine of respondeat superior because, at the time of the collision, Defendant Paschal was acting outside the scope of his employment.  (Def.'s Br. Supp. Mot. at 9.) Plaintiff argues that the evidence creates a jury question as to whether Defendant Paschal was acting within the scope of his employment at the time of the collision.  (Pl.'s Resp. Br. (Docket Entry No. 89-2) at 7.)   The Court agrees with Defendant Hill-Rom that the evidence shows that Defendant

Paschal was acting outside the scope of his employment at the time of the collision.

"[I]n determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual employment." Doe v. Vill. of St. Joseph, Inc., 202 Ga. App. 614, 616, 415 S.E.2d 56, 57 (1992) (internal quotation marks and citation omitted).  "If the tortious act were committed not by reason of employment, but rather for purely personal reasons disconnected from the authorized business of the master, the master would not be liable." Id. (alteration, internal quotation marks, and citation omitted); see also Piedmont Hosp., Inc. v. Palladino, 276 Ga. 612, 613-14, 580 S.E.2d 215, 217 (2003) ("If a tortious act is committed not in furtherance of the employer's business, but rather for purely

31

personal reasons disconnected from the authorized business of the master, the master is not liable." (internal quotation marks, alterations, footnote and emphasis omitted)).

"It is a recognized principle under Georgia law that when an employee is involved in a collision, while operating his employer's vehicle, a presumption arises that he is acting within the scope of his employment." Gordy Constr. Co. v. Stewart, 216 Ga. App. 882, 882, 456 S.E.2d 245, 246 (1995). "Once this presumption arises the burden then shifts to the employer to rebut the presumption by evidence that is clear, positive and uncontradicted and that shows the servant was not in the scope of his employment." Id. at 882-83, 456 S.E.2d at 246; see also Fuller v. Charter S., Inc., 216 Ga. App. 211, 212, 453 S.E.2d 754, 755-56 (1995) ("Where a vehicle is involved in a collision, and evidence shows that the vehicle is owned by the employer of the driver, a

32

presumption is raised that the driver was in the scope of his employment at the time of the collision, placing the burden on the employer to show otherwise.").

The Georgia Supreme Court has given guidance on how to treat an employee who was on-call for purposes of respondeat superior liability:

> A statement that an employee is "on call" at the time of an accident points directly only to the question of whether the employee was or was not subject to call. It only proves, without inference or presumption, that an employee could be called to duty at that time. On the other hand, to show that an employee was acting in the scope of her employment, evidence that the employee was "on call" must be coupled with an inference or presumption that the employee had, in fact, been called to duty and was acting pursuant to that duty at the time of an accident.

Hicks v. Heard, 286 Ga. 864, 868, 692 S.E.2d 360, 363 (2010).

33

It is undisputed that, at the time of the collision, Defendant Paschal was acting not in furtherance of the authorized business of his master, but for purely personal reasons.   Defendant Paschal's testimony to that effect illustrates this point.   Whatever memory lapses Defendant Paschal may have had about the night, he was sure that his entire venture on the night of the collision in his company vehicle was purely personal.   He reiterated this multiple times concerning the exact time of the collision.   Therefore, Defendant Hill-Rom has rebutted the presumption that Defendant Paschal was acting within the scope of his employment simply because he was driving a company vehicle.

Although a jury would be permitted to find that Defendant Paschal was on-call, he testified that he did not receive or respond to any calls that night.   The only call that

came to Defendant Hill-Rom's call center during the relevant time period occurred five hours before the collision and did not result in any person on-call being dispatched. Thus, the evidence shows that Defendant Paschal had not been called to duty.

Even if Defendant Paschal had been called to duty, his testimony makes clear that he was not acting pursuant to that duty at the time of the collision. Graham v. City of Duluth, 328 Ga. App. 496, 501, 759 S.E.2d 645, 650 (2014) ("Under Georgia law, if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, . . . the master is not liable." (internal quotation marks and citation omitted)). This same reasoning applies to Defendant Paschal's statement that he was within four hours of answering a call that night. Defendant Paschal's testimony makes clear that,

at the time of the collision, he was not pursuing a call or any authorized business purpose; he was on a purely personal mission.    Thus, at the relevant time period, Defendant Paschal was outside the scope of his employment.  Id.

Plaintiff argues Defendant Paschal's phone records show that he may have received a call from Defendant Hill-Rom close in time to the collision, and thus may have been pursuing Defendant Hill-Rom's business at the time of the collision.  (PSMF ¶¶ 8-10; Pl.'s Resp. Br. (Docket No. 89-2) at 10-11; see also Clo White Co. v. Lattimore, 263 Ga. App. 839, 839, 590 S.E.2d 381, 383 (2003) (holding that a jury issue existed because "evidence here supports the conclusion that Pilgrim may have actually been on the phone regarding matters of company business *at the time of the*

*accident*" (emphasis in original)).[7]  However, this possibility is negated by Defendant Paschal's testimony that he did not receive or respond to a call from Defendant Hill-Rom the night of the collision.  Whoever the recipient and receiver of Defendant Paschal's text messages may be, his testimony shows that they were not associated with Defendant Hill-Rom.   Further, even assuming he did receive a call, Defendant Paschal unequivocally testified that he was not pursuing Defendant Hill-Rom business at the time of the

---

[7] The Court agrees with Defendant Hill-Rom that "Plaintiff has no evidence what this 'scrambled number' is or any indication that it is associated with [Defendant] Hill-Rom." (Def.'s Br. Supp. Mot. at 5.)   The assertion that the numbers are associated with Defendant Hill-Rom amounts to speculation, which is not enough to escape summary judgment. See Vega v. Invsco Grp. Ltd., 432 F. App'x 867, 869-70 (11th Cir. 2011) ("Although . . . the district court, assess[es] the evidence in the light most favorable to the nonmoving party, the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" (citation omitted)).

crash.   Therefore, he was acting outside the scope of his employment.   <u>Graham</u>, 328 Ga. App. at 501, 759 S.E.2d at 650 ("Under Georgia law, if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, . . . the master is not liable." (internal quotation marks and citation omitted)). Accordingly, because Defendant Paschal was not acting within the scope of his employment, the Court will enter summary judgment on Plaintiff's respondeat superior claim.

## B. Negligent Hiring, Retention, Training and Supervision

Defendant Hill-Rom contends that Plaintiff's negligent hiring, retention, training, and supervision claims fail because the evidence shows that Defendant Paschal's actions on the night of the collision were wholly unrelated to his employment.   (Def.'s Br. Supp. Mot. at 12.)   Plaintiff argues

38

that he has presented sufficient evidence to create a jury issue concerning whether Defendant Paschal was acting under the color of employment at the time of the collision. (Pl.'s Resp. Br. at 12.) The Court agrees with Defendant Hill-Rom.

Georgia courts "have recognized that an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment." Munroe v. Universal Health Servs., Inc., 277 Ga. 861, 862, 596 S.E.2d 604, 605 (2004). However, "liability does not attach if the employee committed the tort in a setting or under circumstances wholly unrelated to his employment." Graham, 328 Ga. App. at 506, 759 S.E.2d at 653. "The question is not whether the servant was acting within the scope of his authority, but whether in view of his known

39

characteristics such an injury by him was reasonably to be apprehended or anticipated." Id. (internal quotation marks omitted).  "Still, the act must be committed 'within the tortfeasor's working hours or under the color of employment.'" Id. (citations omitted).

Georgia courts have specifically provided guidance in the situation where an employee gets into a vehicle collision with a person who has no relation to the employer:

> In order for an employer to be liable for an automobile accident under the theory of negligent hiring and retention where, as here, the allegation is that the employee had a bad driving record and where the injured driver was merely a member of the general public on the public highway, "the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in [the employer's] business."

Dougherty Equip. Co. v. Roper, 327 Ga. App. 434, 438, 757 S.E.2d 885, 889 (2014) (alteration in original) (quoting Video

Warehouse, Inc. v. Southern Trust Ins. Co., 297 Ga. App. 788, 790, 678 S.E.2d 484, 487 (2009)).

The collision happened under circumstances wholly unrelated to Defendant Paschal's employment.  Plaintiff was a member of the general public.  Further, Defendant Paschal was not engaged in any business for Defendant Hill-Rom at the time of the collision.  See discussion supra Section III. A. It makes no difference to the Court's conclusion that Defendant Paschal was on-call at the time of the collision, because he had not been called to duty and was not acting pursuant to that duty.  Dougherty Equip., 327 Ga. App. at 436-48, 757 S.E.2d at 888-89 (granting summary judgment to employer on negligent hiring and retention claim when employee, driving a company van, hit the plaintiff, even though employee was an on-call technician).  Because Defendant Paschal was not engaged in his employer's

41

business at the time of the collision, the Court need not address whether Defendant Hill-Rom knew or should have known whether he was an allegedly incompetent driver. The Court finds that Defendant Hill-Rom is entitled to summary judgment on this claim.

## C.   Negligent Entrustment

Defendant Hill-Rom argues it is entitled to summary judgment on Plaintiff's negligent entrustment claim because it did not have actual knowledge of Defendant Paschal's alleged pattern of reckless driving. (Def.'s Br. Supp. Mot. at 14.) Plaintiff contends that Defendant Hill-Rom did have actual knowledge of Defendant Paschal's alleged dangerous and unsafe driving history. (Pl.'s Resp. Br. at 18.) The Court finds that a reasonable juror could find that Defendant Hill-Rom had actual knowledge of Defendant Paschal's history of driving incompetence.

42

"Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness." Gunn v. Booker, 259 Ga. 343, 346, 381 S.E.2d 286, 290 (1989) (footnote omitted). "It is not sufficient . . . for a plaintiff to show constructive knowledge, i.e., that the entrustor should have known the person being entrusted was not competent." Carolina Cable Contractors, Inc. v. Hattaway, 226 Ga. App. 413, 415, 487 S.E.2d 53, 54 (1997). "The entrustor is not liable 'merely because [he or she], by the exercise of reasonable care and diligence, could have ascertained the fact of the incompetency of the driver.'" Id. 487 S.E.2d at 55 (alteration in original) (quoting Roebuck

43

v. Payne, 109 Ga. App. 525, 526, 136 S.E.2d 399, 401 (1964)).

"This is not to say that circumstantial evidence cannot be used to prove actual knowledge." Carolina Cable, 226 Ga. App. at 416, 487 S.E.2d at 55. "The entrustor's denial of having knowledge that the driver was incompetent or habitually reckless shifts the burden to the plaintiff to set forth specific facts showing a genuine fact issue." Upshaw v. Roberts Timber Co., 266 Ga. App. 135, 138, 596 S.E.2d 679, 682 (2004) (citing Carolina Cable, 226 Ga. App. at 414, 487 S.E.2d at 54). "The plaintiff carries this burden by pointing out 'evidence of actual knowledge of a pattern of [incompetence] or facts from which such knowledge could be reasonably inferred in order to preserve the issue for jury determination.'" Id. (quoting Carolina Cable, 226 Ga. App. at 416, 487 S.E.2d at 55).

44

A factfinder may infer that an inquiry into an employee's driving record would impart knowledge upon the employer of what appears within that driving record. See Ed Sherwood Chevrolet, Inc. v. McAuley, 164 Ga. App. 798, 802, 298 S.E.2d 565, 569 (1982) (citing Barnes v. Allen Kane's Major Dodge, Inc., 148 Ga. App. 332, 334, 250 S.E.2d 876, 878-79 (1978) (reversed in Allen Kane's Major Dodge, Inc. v. Barnes, 243 Ga. 776, 777, 257 S.E.2d 186, 188 (1979), as to the respondeat superior theory, but not as to negligent entrustment theory)); see also Thomason v. Harper, 162 Ga. App. 441, 450-51, 289 S.E.2d 773, 783 (1982).  The same is true even if the employer denies knowledge of the contents contained therein. Clarke v. Cox, 197 Ga. App. 83, 83, 397 S.E.2d 598, 599-600 (1990) ("This court has previously noted that a plaintiff generally must rely upon circumstantial evidence in this type of case, and that circumstantial

evidence can support a finding of actual knowledge if it is incompatible with the direct and positive testimony denying actual knowledge."); Ed Sherwood Chevrolet, 164 Ga. App. at 801-02, 298 S.E.2d at 568-69.

Defendant Hill-Rom states that Mr. Frantzen, upon review of Defendant Paschal's 2015 MVR, overlooked every new violation contained within that report. However—as case law demonstrates—because Defendant Hill-Rom reviewed his 2015 MVR, a reasonable juror could find that Hill-Rom had actual knowledge of the citations, violations, and suspension contained therein. Therefore, taking the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Defendant Hill-Rom knew Defendant Paschal (1) was arrested in 2011 for DWI; (2) was cited in 2011 for going twenty miles over the speed limit (which, with a conviction, would constitute a serious traffic violation under

46

the Driver Disqualification Policy); (3) was involved in 2012 in an accident causing property damage; (4) was arrested on June 2, 2015 for a suspended or revoked license (and subsequently, Defendant Hill-Rom had to go and pick up Defendant Paschal's company vehicle); (5) was cited in 2015 for driving fifteen miles over the speed limit (which, with a conviction, would constitute a serious traffic violation under the Driver Disqualification Policy); (6) was cited in 2015 for improper backing into a vehicle; and (7) had his license suspended twice while working for Defendant Hill-Rom (and one of those suspensions would have mandated that Defendant Paschal be removed from his job driving for Defendant Hill-Rom). Defendant Hill-Rom possessed this knowledge before the collision, and even before it promoted Defendant Paschal and gave him greater access to the company vehicle. This evidence is sufficient to pose a jury

question as to whether Defendant Hill-Rom negligently entrusted the company vehicle to Defendant Paschal before the collision.[8]   Therefore, the Court denies Defendant Hill-Rom's request for an entry of summary judgment on this claim.

### D.   Negligent Maintenance, Driving Qualifications, and Contracting

Defendant Hill-Rom states that Plaintiff has not pleaded any facts regarding "mechanical defects of the subject vehicle, and there is no evidence in record of any mechanical defects before the accident."   (Def.'s Br. Supp. Mot. at 17.) Defendant Hill-Rom also contends that "Plaintiff's claims for negligent driving qualifications and contracting are as equally

---

[8] The Court is not persuaded by Defendant Hill-Rom's citations to <u>Spencer v. Gary Howard Enters., Inc.</u>, 256 Ga. App. 599, 568 S.E.2d 763 (2002), and <u>Marques v. Ross</u>, 105 Ga. App. 133, 123 S.E.2d 412 (1961).   This case presents facts demonstrating knowledge of a greater pattern of recklessness on the part of the employer, and thus, is distinguishable from the two former cases.

unsupported," that "Plaintiff has failed to even demonstrate such claims exist under Georgia law," and that "in the Complaint, Plaintiff merely lists the claims with no accompanying allegations." (Id.) Plaintiff has failed to respond to Defendant Hill-Rom's arguments. See N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.")

The Court agrees with Defendant Hill-Rom that judgment as a matter of law in Hill-Rom's favor is appropriate for these claims. See Jones, 683 F.3d at 1292 ("[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (internal quotation marks, alterations, and citation omitted)); Holland v. Dep't of Health

& Human Servs., 51 F. Supp. 1357, 1376 (N.D. Ga. Sept. 30, 2014) (finding that a plaintiff abandoned a claim by failing to respond to the defendant's arguments concerning that claim on a motion to dismiss).

## E.   Gross Negligence

Defendant Hill-Rom contends that no reasonable jury could find a total absence of care in Defendant Hill-Rom's actions. (Def.'s Br. Supp. Mot. at 18.) Plaintiff argues that the facts of this case pose a jury issue that cannot be adjudicated on summary judgment. The Court agrees with Plaintiff.

O.C.G.A. § 51-1-4 defines gross negligence:

In general, slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances. As applied to the preservation of property, the term "slight diligence" means that care which every man of common sense, however inattentive he may be, takes of his

own property.  The absence of such care is termed gross negligence.

O.C.G.A. § 51-1-4.  "In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise.  Wolfe v. Carter, 314 Ga. App. 854, 859, 726 S.E.2d 122, 126 (2012).

"When facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable [people] as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury."  Colonial Props. Realty Ltd. P'ship v. Lowder Const. Co., 256 Ga. App. 106, 112, 567 S.E.2d 389, 394 (2002) (footnote omitted); see also Wolfe, 314 Ga. App. at 859, 726 S.E.2d at 126 (2012)

("Questions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury, but in plain and indisputable cases the court may solve the question as a matter of law.").

Defendant Hill-Rom did criminal background checks for its employees, and additionally, Defendant Hill-Rom diligently provided Defendant Paschal with driver training. Defendant Hill-Rom also performed annual MVR's on Defendant Paschal. However, evidence in this case also demonstrates that Defendant Hill-Rom may have completely disregarded information in the annual MVR's, given that Mr. Frantzen did not register any new citations, violations, or suspensions which were present on Defendant Paschal's 2015 MVR.

On June 2, 2015, Defendant Hill-Rom had to pick up Defendant Paschal's company vehicle because he had been arrested for having a suspended or revoked license. Taking

the facts in the light most favorable to Plaintiff, Defendant Hill-Rom never disciplined Defendant Paschal, nor suspended or curtailed his driving privileges after this incident. Then, on August 6, 2015, Defendant Hill-Rom conducted Defendant Paschal's 2015 MVR, which showed an almost one-month suspension which should have, under the Driver Disqualification Policy, resulted in temporarily prohibiting Defendant Paschal from performing any driving-related job functions. The 2015 MVR also contained another six-month suspension for which the Driver Disqualification Policies mandated that Defendant Paschal be removed from his job. The 2015 MVR also contained two new citations, one of which would arguably constitute a serious traffic violation under the Driver Disqualification Policy. Defendant Hill-Rom took no disciplinary action.[9]  Indeed, Defendant Hill-

---

[9] The 2015 MVR, along with his June 2, arrest, illustrated that

Rom subsequently decided to promote Defendant Paschal *and* give him greater access to a company vehicle. Defendant Paschal then drove that vehicle the wrong way on the interstate and collided with Plaintiff. The Court finds that the evidence poses a jury issue as to whether Defendant Hill-Rom was grossly negligent.

## F.   Negligence Per Se

To recover under a theory of negligence per se, one element that a plaintiff must prove is that the defendant violated a statute.   See <u>Norman v. Jones Lang Lasalle</u>

---

Defendant Paschal habitually failed to report driving violations. However, Defendant Hill-Rom did not choose to conduct MVR's with greater frequency going forward.   Defendant Paschal's license had been suspended for seven months at the time of the collision.   If Defendant Hill-Rom had made itself aware of this fact before the collision by conducting MVR's with greater frequency, the Driver Disqualification Policies would have mandated that Defendant Paschal be removed from his job, i.e., he would not have been allowed to drive a Defendant Hill-Rom company vehicle on the date of the collision.

Americas, Inc., 277 Ga. App. 621, 628, 627 S.E.2d 382, 388 (2006). Defendant Hill-Rom indicates that Plaintiff has failed to allege that Defendant Hill-Rom has violated a statute. (Def.'s Br. Supp. Mot. at 19.) Defendant Hill-Rom states that "the only statutes cited in the Complaint with regard to Plaintiff's negligence per se claim relate to [Defendant] Paschal's alleged failure to exercise the mandatory standard of care." (Id.) Plaintiff has not responded to Defendant Hill-Rom's argument. See N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").

The Court agrees with Defendant Hill-Rom that judgment as a matter of law in Hill-Rom's favor is appropriate for this claim. See Jones, 683 F.3d at 1292 ("[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (internal quotation marks, alterations, and citation omitted)); Holland, 51 F. Supp. at 1376 (finding that a plaintiff abandoned a claim by failing to respond to the defendant's arguments concerning that claim on a motion to dismiss).

### G.   Punitive Damages

Defendant Hill-Rom argues that Plaintiff failed to state a claim for punitive damages because the claim for those damages is conclusory.   (Def.'s Br. Supp. Mot. at 20.) Plaintiff contends that he has alleged enough facts to warrant the recovery of punitive damages.  (Pl.'s Resp. Br. at 23.)

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful

misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.

Plaintiff does not explicitly claim punitive damages in his complaint, but asks for exemplary damages. (Compl. at 8.) Plaintiff does not state any facts in that section that would support a punitive damages claim, nor does he even list the elements of a punitive damages claim. (Id.) The Court agrees with Defendant Hill-Rom that, because Plaintiff's punitive damages claim is entirely conclusory, he has failed to state a claim for punitive damages. Moore v. Myland, Inc., 840 F. Supp. 2d 1337, 1353 (N.D. Ga. Jan. 5, 2012) ("The Court agrees with defendants that plaintiff's conclusory pleading without stating any facts to support her claim fails to state a claim for punitive damages."); Henderson v. Sun

Pharms. Indus., Ltd., No. 4:11-CV-0060-HLM, 2011 WL 4024656, at *8 (N.D. Ga. June 9, 2011) (with regard to a punitive damages claim, "Plaintiff . . . does not provide any factual support for those allegations and such general, conclusory allegations are insufficient under Iqbal").[10] The Court therefore grants Defendant Hill-Rom's Motion for Summary Judgment as to this claim.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Hill-Rom's Motion for Summary Judgment [81].

The Court **GRANTS** Defendant Hill-Rom's Motion with respect to Plaintiff's, (1) respondeat superior claim, (2)

---

[10] Plaintiff cites exclusively to Georgia law to claim he has sufficiently pleaded a claim for punitive damages. (Pl.'s Resp. Br. at 22-23.) However, the pleading standards in this case are governed by federal law. Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

negligent hiring, retention, training, and supervision claims, (3) negligent maintenance, driving qualifications, and contracting claims, (4) negligence per se claim, and (4) punitive damages claim.

The Court **DENIES** Defendant Hill-Rom's Motion with respect to Plaintiff's (1) negligent entrustment claim and (2) gross negligence claim.

The Court **ORDERS** Plaintiff and Defendants to file their proposed consolidated pretrial order **WITHIN THIRTY (30) DAYS**. The Court **DIRECTS** the Clerk to place this case on the Court's next available trial calendar following the submission of the pretrial order.

All motions in limine are due no later than fourteen calendar days prior to the date on which the trial of this case is scheduled to begin.  Absent a showing of good cause, the Court will not consider untimely-filed motions in limine.

IT IS SO ORDERED, this the 1̸ day of January, 2018.

_____

SENIOR UNITED STATES DISTRICT JUDGE